Belknap
No. 78-238

RUSSELL KEENE & a.

v.

TOWN OF MEREDITH

May 23, 1979

*Carroll R. Hunter*, of Meredith, by brief and orally, for the plaintiff.

*Colin A. Norberg*, of Meredith (*Gary E. Hicks*, of Manchester, orally), for the defendant.

GRIMES, J.  The issue in this case is whether the Meredith Planning Board has jurisdiction to prevent the sale of one of two lots owned by the plaintiffs. We hold that it does not.

Plaintiffs are owners of two lots of land that they purchased in 1969. One, the "back lot," is located on one side of a roadway that is maintained by the town and used by the public; the other, known as the "shore lot," is located on the opposite side of the road and on the shore of Lake Winnipesaukee. When purchased, the back lot had on it a house which the plaintiffs occupied as a dwelling from 1969 until 1972. The shore lot, however, had no buildings upon it at the time of purchase.

In 1972, the plaintiffs applied for and received a building permit and constructed a home on the shore lot after having complied with both State and local requirements. The back lot and dwelling has since then been used for guests and paying tenants, and neither house is accessory to the other. The plaintiffs, desiring to sell the back lot with building, sought a waiver of jurisdiction from the planning board, but their request was refused. Thereafter, in January 1976, they applied for subdivision. This too was denied.

Plaintiffs petitioned the superior court for review under RSA 36:34 (Supp. 1977), which authorizes the court to "reverse or affirm, wholly or partly, or [to] modify the decision brought up for review." After a

hearing, a Master (*Walter L. Murphy*, Esq.) found that the shore and back lots were two separate lots, and that it was not within the jurisdiction of the planning board to prohibit the sale of one of them because such a sale was not a subdivision. A decree was entered in accordance with the master's recommendation by *Keller*, C.J., and the town's exceptions were transferred by *Batchelder*, J.

The lots in question are described separately as lots in the deed to the plaintiffs. As described, the lots are bounded by land which was reserved for the road and not conveyed to the plaintiffs. They are taxed as separate lots and they are identified and shown on the town tax map as separate lots with separate lot identification numbers. Although each lot contains less than the required square footage specified in the zoning regulations, this has no bearing on the question whether they are separate lots. The town argues that the term "lot" in the zoning ordinance should be construed as a parcel of land meeting the zoning requirements, and that because each of plaintiffs' parcels is substandard in size, they must be considered together as one lot.

The town's argument might carry weight in dealing with parcels of land under the zoning ordinance, but it has no relevance in determining whether the sale of one of these lots, substandard or not, constitutes a subdivision. The plain fact of the matter is that these are indeed individual parcels of land separated by a road and treated by the town as separate lots. There is therefore no division of a lot, but rather the sale of one of two separate lots. The fact that each lot has a building on it and is substandard in size in no way makes them one lot.

In applying for a permit to build on the shore lot, plaintiffs indicated that there were two lots and that the rear lot already had a building on it. On the plan submitted as part of the application the plaintiffs shaded in the front lot to show on which lot the house was to be built. This case is unlike *Isabelle v. Town of Newbury*, 114 N.H. 399, 321 A.2d 570 (1974), where more than one structure existed on a single lot, thus requiring subdivision to permit the sale of one of the buildings with land around it. In that case there was but one parcel of land with several buildings on it. Here there are two individual parcels of land separated by a road.

There is no question in this case relating to control of density. Buildings already exist on each of the lots and no increased density will result by the change in ownership.

In sum, we hold that the trial court was correct in ruling that the planning board has no jurisdiction over the sale of the back lot, because no subdivision is involved.

*Exceptions overruled.*

LAMPRON, C.J., dissented: the others concurred.

LAMPRON, C.J., dissenting.

Plaintiffs contend and the majority opinion holds that the proposed sale is not a subdivision because the land in question is already divided into two separate parcels. Therefore it is argued that the planning board has no jurisdiction over the proposed sale. RSA ch. 36, which regulates planning boards, defines a subdivision in pertinent part as follows: " 'Subdivision' means the division of the lot, tract or parcel of land into 2 or more lots, plats, sites, or other divisions of land for the purpose . . . of sale . . . . " RSA 36:1 VIII (Supp. 1977). Section 3:13 of the Meredith Land Subdivision Regulations has essentially the same definition.

Plaintiffs purchased the land in question as one unit. They dealt with it as one unit with regard to their source of water and for sewage disposal. Indeed, when they applied for a permit to build a house on the "front lot" they represented that their unit of land contained both lots. "My deed shows a 100′ x 100′ lot (Lot #30) whereas my back lot (lot #7) 104′ x 208′ with buildings, brings the total square footage to 31,630." Thus the combined footage of both lots was shown on the application. Plaintiffs maintain, however, that their land was in essence divided by Pinnacle Park Road, which separates the lots. "[A] parcel of land does not lose its unitary character simply by the happenstance of any intersecting boundary line, street or dedicated road." *State v. Emmich*, 34 Ore. App. 945, 580 P.2d 570, 571 (1978). Nor does the property lose its unitary character simply because it is treated differently for tax purposes. *See* 4 R. ANDERSON, AMERICAN LAW OF ZONING, § 23.02, at 44 (2d ed. 1977). Therefore, plaintiffs by the proposed sale will divide the land into two parts and a subdivision, as defined by the enabling legislation, will be created.

If plaintiffs' proposed sale were to go through, there will be two lots of approximately 10,000 square feet and 20,000 square feet. The town zoning ordinance, however, requires a minimum lot size of 30,000 square feet. This court has recently held in *Beck v. Town of Raymond*, 118 N.H. 793, 796, 394 A.2d 847, 849 (1978), that: "Regulating and restricting the density of population are standard objectives of the Standard State Zoning Enabling Act, 1 R. Anderson, American Law of Zoning § 7.06 (2d ed. 1976), and are expressly delegated to a town in New Hampshire pursuant to the power to zone, RSA 31:60."

> The legal device most widely used to implement community planning in the United States is the comprehensive zoning ordinance. A zoning ordinance which is tailored to the needs of a community and administered in the letter and spirit

of the comprehensive plan can be an effective tool for the control of land use. It can accomplish a separation of incompatible uses and avert the extremes of overcrowding and irregularity.

4 R. ANDERSON, AMERICAN LAW OF ZONING § 23.03 (2d ed. 1977); *Isabelle v. Town of Newbury*, 114 N.H. 399, 321 A.2d 570 (1974).

The town of Meredith has a comprehensive zoning ordinance. There was evidence presented by the town that the purpose for the 30,000 square foot lot requirement was to control the density of occupancy in the district in question. A town selectman and former member of the planning board testified as follows: "The density was not arbitrarily chosen [sic] it was adopted from the guidelines of the Town's comprehensive plan, the Zoning Ordinance was written from that, adopted by the Town and it's the Planning Board's function . . . to carry out the requirement of zoning ordinance."

> Enactments in the field of zoning and subdivision control are necessarily related to each other and they should be read and considered together . . . . A subdivider, seeking approval of a subdivision plat, must first meet applicable zoning regulations and they must comply with state and county subdivision regulations. Thus, where a preliminary plat indicates on its face that it is violative of zoning ordinances, the denial of approval of the plat will be sustained.

3 E. YOKLEY, ZONING LAW AND PRACTICE § 17.10, at 86–87 (4th ed. 1979). *See also Nat. Capital Corp. v. Village of Inver Grove Heights*, 301 Minn. 335, 222 N.W.2d 550 (1974); *Loveless v. Yantis*, 82 Wash. 2d 754, 513 P.2d 1023 (1973).

In sum, the Meredith Planning Board had jurisdiction over the proposed subdivision, and was correct in denying subdivision approval for the substandard lots. Therefore, based on the record, the decision of the planning board can not be ruled "illegal in whole or in part," as required by RSA 36:34 I (Supp. 1977). Accordingly, I would set aside the decree in favor of the plaintiffs.